# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

PHYLLIS MANSFIELD *vs.* COMMISSIONER OF THE
DEPARTMENT OF PUBLIC WELFARE.

No. 94-P-1027.

Worcester. December 12, 1995. - January 29, 1996.

Present: DREBEN, GILLERMAN, & JACOBS, JJ.

*Medicaid. Department of Public Welfare. Constitutional Law*, State action. *Administrative Law*, Hearing. *Due Process of Law*, Hearing.

Where a personal care service agency requested, pursuant to 106 Code Mass. Regs. § 422.403 (B) (4) (a), that a recipient's Medicaid personal care services be reduced and where the Department of Public Welfare specifically approved the reduction pursuant to 106 Code Mass. Regs. § 422.411, sufficient State action was shown to require, under both State and Federal law, that the recipient be given a hearing pursuant to 106 Code Mass. Regs. § 343.230 (A) (3) to challenge the agency's interpretation of the regulation on which it relied to reduce the benefits. [2-5]

CIVIL ACTION commenced in the Superior Court Department on April 8, 1993.

The case was heard by *James P. Donohue*, J.

*Rosemary S. Gale,* Assistant Attorney General, for the Commissioner of the Department of Public Welfare.

*Sandra L. Mayes* for the plaintiff.

DREBEN, J. The question before us is whether State action was involved in the reduction of the plaintiff's benefits. If so, a hearing would be required.

The plaintiff initially applied for Medicaid personal care services while living in Lawrence. The Northeast Independent Living Program, a personal care agency, submitted a request to the Department of Public Welfare (Department) for fifty-four hours of personal care services per week. The Department approved the request without modification. When the plaintiff moved to Hubbardston, the Center for Living and Working became the personal care agency responsible for administering her personal care services. That agency, after a reevaluation, concluded that the plaintiff required only fifty-one hours per week and filed a request showing that number of hours. The authorization (reduction) was approved by the Department. If State action were involved, the decision to reduce benefits would be subject "to the strictures of the Fourteenth Amendment [to the United States Constitution]." *Blum* v. *Yaretsky,* 457 U.S. 991, 993 (1982). On the ground that no State action, but only private action occurred, a hearing examiner of the Department dismissed the plaintiff's administrative appeal for lack of jurisdiction. The plaintiff then brought this action under G. L. c. 30A, G. L. c. 231A, and 42 U.S.C. §§ 1983 and 1988. A Superior Court judge held that she was entitled to a hearing under both Federal and State law. He remanded the matter to the Department for a hearing, and the Department now appeals.

We affirm the ruling of the judge that State action was involved and that the plaintiff was entitled to a hearing concerning the reduction in her benefits.[1] Contrary to the Department's contention, *Blum* v. *Yaretsky, supra,* does not foreclose this result.

---

[1]Although the plaintiff's benefits were increased for a later period, and although she received the additional hours as "aid-pending" during the period at issue, the Department does not argue that the case is moot. In its brief, it states: "Because the additional three hours of PCA services were provided as 'aid pending,' it is theoretically possible that the Department could seek repayment by Ms. Mansfield for the extra hours of service funded by the Department during the pendency of the administrative appeal."

A review of the decision of the hearing examiner, who had concluded that there was no State action and hence no jurisdiction to give the plaintiff a hearing, indicates that the basis for the reduction in benefits by the private personal care agency was a departmental regulation involving shared living.[2] The plaintiff claimed that the regulation had been misinterpreted, but the hearing examiner decided that the controversy was not a result of adverse Department (State) action, but rather of the decision of the private care provider.

The Department is correct that *Blum* v. *Yaretsky*, 457 U.S. at 1004-1005, held that "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." As the Superior Court judge pointed out, however, there is a significant difference between the Massachusetts regulations and the regulations in *Blum*. The question in that case was whether the State (New York) could be held responsible, and hence subject to the requirements of the Fourteenth Amendment, for decisions by nursing homes to discharge or transfer patients without notice or an opportunity for a hearing. In holding that State action was not involved, the majority opinion pointed out that nothing in the regulations

> "authorizes the officials to approve or disapprove decisions either to retain or discharge particular patients, and the [State officials] specifically disclaim any such responsibility . . . . Adjustments in benefit levels in response to a decision to discharge or transfer a patient

---

Our decision precludes such a repayment but does not require a remand as the plaintiff's benefits were in fact not reduced.

[2]The hearing examiner stated that the regulation at issue was 106 Code Mass. Regs. § 422.403(B)(4)(a) which provides as follows:

> "(4) In determining the number of hours of assistance required by a consumer under Subsection (3) above, the personal care agency will assume the following.

> > (a) When a consumer is living with family members, they will provide assistance with most instrumental activities of daily living. For example, routine laundry, housekeeping, and shopping should include those needs of the consumer. The Department recognizes that this may not always be possible."

does not constitute approval or enforcement of that decision. As we have already concluded, this degree of involvement is too slim a basis on which to predicate a finding of state action in the decision itself." *Id*. at 1010.

By contrast, as the Superior Court judge explained, pursuant to 106 Code Mass. Regs. §§ 422.411 and 422.412 (1988),[3] the Department must specifically approve or deny a prior authorization request submitted by the personal care agency. This is not the "mere approval or acquiescence" held insufficient in *Blum*.

Of equal significance is that the *Blum* decision was very careful to point out that the situation would be different if the plaintiffs were challenging particular State regulations or procedures, *id*. at 1003, or if they were accurate in contending that the State "affirmatively commands" the reduction. *Id*. at 1005. In *Blum*, the challenged decisions were characterized by the majority opinion as medical judgments "made by private parties according to professional standards that [were] not established by the State." *Id*. at 1008, and n. 19 at 1009. In the instant case, the rule of conduct (the regulation) was

---

[3]The relevant portions of the regulations provide:

"*422.411: Prior Authorization*

(A) The personal care agency must obtain prior authorization from the Department as a prerequisite to payment for personal care and transitional living services.

. . .

"*422.412: Notice of Approval or Denial for Personal Care Services*

(A) *Notice of Approval.* If the Department approves a prior-authorization request for personal care services, the Department will send written notice to the consumer and the personal care agency regarding the frequency, duration, and intensity of care authorized, as well as the effective date of the authorization.

(B) *Notice of Denial and Right of Appeal.*

(1) If the Department denies a prior-authorization request for personal care services, the Department will notify both the consumer and personal care agency. The denial notice will state the reason for the denial and will inform the consumer and the personal care agency of the right to appeal, and of the appeal procedure."

imposed by the State and did not involve a medical decision but was a policy decision concerning the effect of shared living. Where the challenge is to the application of a State regulation, there is, again, more than "mere approval or acquiescence."

We conclude that the approval provisions of the Massachusetts regulations § 422.411, taken in conjunction with the challenge to the interpretation of the shared living regulation, distinguish this case from *Blum*, and that there is here "a sufficiently close nexus between the State and the challenged action." *Id.* at 1004.

For the same reasons we conclude that under State law there is a sufficient nexus between the private health provider's actions and the Department to require a hearing. 106 Code Mass. Regs. § 343.230(A)(3) (1989).

The judgment of the Superior Court is affirmed to the extent that it declares that the plaintiff was entitled to a hearing concerning the determination that her benefits were to be reduced. Because the benefits were not in fact reduced, see note 1, *supra*, no hearing is necessary.

*So ordered.*